In the Matter of the Application of JOHN T. BRENNAN for Admission to the Bar.

Second Department, June 23, 1930.

*Jay Leo Rothschild,* for the motion.

*Charles N. Wysong,* for committee on character and fitness, opposed.

LAZANSKY, P. J. The committee on character and fitness, appointed by this court, having refused to certify the applicant for admission to the bar, he applies to the court for an order directing the committee to so certify. The applicant, a native born citizen, is married and forty years of age. He graduated from New York University in 1912, and from the Law School of St. John's College in 1929. He served in the World war. Having received the certificate of the State Board of Law Examiners, he appeared before the committee on character and fitness to have the committee pass upon his character and general fitness. There is no question raised as to his moral worth, although the committee has not passed upon it.

The applicant was asked by the committee two questions: (1) Who discovered America? and (2) What are the expressed powers granted to the United States Government under the Constitution? The applicant, in a respectful way, refused to answer these questions upon the ground that the committee had no power to question him in respect of his learning and ability, as that was determined by his admission to examination by the State Board of Law Examiners and their certificate that he had passed the examination. No question is raised that the applicant by his refusal to answer showed such disrespect for lawful authority that he is not entitled to become a member of the bar.

The question to be determined is the extent of the powers of the committee on character and fitness.

In considering this subject, it will be well to bear in mind that there are four phases of qualifications for admission to the bar: (1) Academic training; (2) legal training; (3) moral character; (4) belief in the form of and loyalty to the government of the United States.

In order to come to an understanding on this subject, it may be advisable, at any rate it may be of some interest, to consider the development in the matter of admissions to the bar, as shown by Constitution, statutes and rules, to the extent they have been found. The first Constitution of the State (Const. 1777, § 27) provided: " And all attornies, solicitors and counsellors at law, hereafter to be appointed, be appointed by the court, and licensed by the first judge of the court in which they shall respectively plead or practice; and be regulated by the rules and orders of the said courts."

Volumes available do not show any rules adopted pursuant to this constitutional edict until the October, 1797, term of the Supreme Court, when a rule was adopted that no person should be admitted to practice as an *attorney* unless he shall have served a regular clerkship of seven years with a practicing attorney of the court; but any portion of time not exceeding four years, during which a person, after he shall be fourteen years of age, shall have pursued classical studies, shall be accepted in lieu of an equal portion of time of clerkship. No examination of any kind was provided for. In the November term of 1803, a rule was adopted that every person who shall have regularly pursued judicial studies under the direction or instruction of a professor or counselor at law, within the State for four years, or shall have been admitted to the degree of counselor at law in any other of the United States and practiced as such for four years in such State, shall be admitted as counsel in this State. Here, again, there was no provision for examination.

In the November term of 1804 a rule was adopted providing that every person who shall be admitted to the degree of attorney of the court, and practiced as such for three years, shall be admitted to practice also as counsel in this court. It is of interest to note that there were admissions as attorney, and also admissions as counsel. This distinction appears for a number of years, but it requires no further consideration here. Of course, separate rules were adopted by the Chancery Court. Only one reference thereto will be made, as after the Constitution of 1846 the separation of the law and equity courts came to an end. In 1815 the rule in Chancery was that no person be admitted to practice as a solicitor in that court until three years after he shall have been admitted to practice as an attorney of the Supreme Court, or unless he shall have served a clerkship of at least three years with a practicing solicitor of the Chancery Court; and the rule further provided that no person was to be admitted to practice as a counselor in this court until two years after he shall have been admitted to practice as a solicitor, or unless he shall be a counselor of the Supreme Court of at least two years' standing; and that every person to be admitted as solicitor or counselor shall (unless it be otherwise specially ordered) be previously examined before the chancellor, and if found competent he shall be admitted, and not otherwise. Here is the first time that an examination of an applicant was required.

The Constitution of 1821 contained no reference to the appointment of attorneys, but by section 19 of chapter 182 of the Laws of 1823 there was enacted the same provision as in the Constitution of 1777. Into the Revised Statutes of 1827 the revisers incorporated in substance both the requirements of chapter 182 of the Laws of

1823, that is, that admission be regulated under rules and regulations of the Supreme Court and of the Chancellor (R. S. pt. 1, ch. 5, tit. 4, §§ 20, 21), and a requirement of the Revised Laws of 1813 that the applicant be approved by the court for good character and learning (R. S. pt. 3, ch. 3, tit. 2, § 65).

In 1837 the Supreme Court adopted the following rules:

" Rule 1. No person shall be permitted to practice as an attorney or counsellor of this court, without a regular admission and license by the court. To obtain such admission and license, the person applying must be examined under the direction of the court.

" Rule 2. No person shall be admitted to examination of an attorney, unless he shall have served a regular clerkship of seven years in the office of a practicing attorney of this court; but if he has regularly pursued classical studies for four years, or any shorter period, after the age of fourteen, it may be allowed in lieu of an equal time of clerkship.   *   *   * "

The evidence of such classical studies shall be:

" 1. A diploma conferring the degree of Bachelor of Arts by some incorporated college, or a certificate of the president of such college;

" 2. If neither can be produced, an affidavit of the teacher or teachers with whom the student has pursued his studies, stating the time spent and the studies pursued, with a specification of the books used; or,

" 3. If the teacher be dead or absent from the country, so that his affidavit cannot be obtained, then the affidavit of the student himself stating such death or absence, and also the time spent with his teacher or teachers, and the books studied by him under each teacher."

Rule 4 provides in part: " Any portion of time, not exceeding two years, spent in regular attendance upon the law lectures in the university of New York, shall be allowed in lieu of an equal portion of clerkship in the office of a practicing attorney of this court."

Here was provision for an examination, but what the nature of the examination was to be is not expressly stated. The basis of admission to examination was a regular clerkship of seven years. In lieu of this, the regular pursuit of classical studies for four years, or any shorter period, was allowed in lieu of an equal time of clerkship. One of the evidences of classical studies was a diploma conferring the degree of Bachelor of Arts by an incorporated college. This, of course, assumed that the person having the diploma was proficient in academic training. As pursuit of classical studies was taken in lieu of a period of clerkship not exceeding four years, it must follow that a person who had served a seven years' clerkship was deemed qualified in so far as scholarly attainment was

concerned. These rules indicate that the examination was to be in matters pertaining to the law. They were continued by order of the Supreme Court on May 30, 1845.

After the adoption of the Constitution of 1846, under which the Supreme Court was granted general jurisdiction in law and equity, the Supreme Court adopted rules, Jul  1847, pursuant to chapter 280 of the Laws of 1847, which  er in part provides: " Every male citizen of the age of twenty  years, applying to be admitted to practice as attorney, solicit  d counsellor in the courts of this State, shall be examined by t  tices of the Supreme Court, which examination shall be at a G  Term thereof; and if such person so applying shall be found  f good moral character, and to possess the requisite quali  as of learning and ability, the court shall direct an order to  ered by the clerk thereof, stating that such person has been  mined and found to possess the qualifications required by  Constitution; and thereupon such person shall be entitled to  as an attorney, solicitor and counsellor in all courts in this  * * *."

The rules were as follows:

" Rule 1. Applicants for admission to  as attorneys, solicitors and counsellors of this court, who  itled to examination, shall be examined in open court  *

" Rule 2. To entitle an applicant to an  ination he must prove to the court: * * *

" 2. The evidence of good moral character shall be the certificate of a reputable counsellor of this court, or of some other reputable person known to the court * * *."

The rules do not state what the nature of the examination was, neither as to general learning nor as to learning in the law. Nothing is said with reference to clerkship or other qualifications of learning.

Pursuant to statutory authority (Code of Procedure, § 470), the Supreme Court adopted rules in August, 1858, which, in effect, are the same as the rules last mentioned except it was provided that in order to entitle an applicant to admission he must sustain " a satisfactory examination upon the law of real and personal property, contracts, partnership, negotiable paper, principal and agent, principal and surety, insurance, executors and administrators, bailments, corporations, personal rights, domestic relations, wills, equity, jurisprudence, pleadings, practice and evidence."

Here the examination was limited to learning in specified subjects of the law. No reference whatsoever is made to scholastic attainments.

It thus appears that moral worth and knowledge of the law are the two essentials. It is likely that the court which framed these

rules was of the opinion that a man who could pass a satisfactory examination in these law subjects must necessarily have sufficient academic training to warrant his admission. These rules were amended December 20 and 21, 1870, pursuant to the power of the Supreme Court to adopt rules in such matters (Laws of 1870, chap. 408, § 13), by which the evidence of good character could be ascertained in addition to other respects by a committee to be appointed by the court. Here we probably have the start of a committee on character. This committee, however, had nothing to do with the learning of the applicant, who was to be examined in open court on legal subjects.

From time to time, laws had been passed by the Legislature under which persons were admitted to the bar on the certificates of certain law institutions. (Laws of 1855, chap. 310; Laws of 1859, chap. 267; Laws of 1860, chaps. 187 and 202, etc.)

The next step was to transfer initial power with reference to admissions to the Court of Appeals. Chapter 486 of the Laws of 1871 provided, in section 1, that it shall be the duty of the judges of the Court of Appeals to establish such rules and regulations as they may deem proper in relation to the admission of persons applying to be admitted as attorneys, solicitors and counselors in all the courts of the State. By section 3 it is provided that every male citizen of the age of twenty-one years, applying to be admitted, shall be examined by the justices of the Supreme Court, or a committee appointed by said court at a General Term thereof, and if such person shall be found to have complied with the rules and regulations prescribed by the Court of Appeals, and approved by said justices of the Supreme Court for his *good character and learning*, the court shall direct an order to be entered stating that such person has been so examined and found to possess the requisite qualifications required by the Constitution and the rules established by the Court of Appeals. That court adopted rules May 1, 1871 (Appendix, vol. 2, Laws of 1871, p. 2194), by which it was provided that no person shall be admitted to practice without a regular admission and license by the Supreme Court at a General Term thereof, and must be examined under the direction of the court. The examinations were to be public and to be conducted by the judges of the court or by not less than three practicing lawyers of at least seven years' standing at the bar, to be appointed by the court. Of what the examinations were to consist the rules do not state. The statute says that the applicant must be approved for his good character and learning. What learning is not stated. It also is provided by the rules of the Court of Appeals that to be admitted to the examination the applicant

must have served a clerkship, or pursued a substituted course of study prescribed by the rules. The clerkship must have been for a period of three years in the office of a practicing attorney after the age of seventeen. The substituted course of study for equal time in clerkship was any portion of time not exceeding one year spent in regular attendance upon the law lectures in certain universities and colleges named. That the Supreme Court considered that the examinations were limited to learning in the law is disclosed by the adoption in 1871 and 1877 of a rule similar to that of 1858, which provided for admission if an applicant has sustained a satisfactory examination upon certain law subjects named in the rules. However, it will subsequently appear that the matter of academic experience is treated in the rules of the Court of Appeals. It seems, however, that under chapter 486 of the Laws of 1871, the rules adopted by the Court of Appeals and the Supreme Court, the learning which the Supreme Court was to pass upon was learning in the law. The provision engaging the attention of the Court of Appeals in the matters of admission to the bar is again found in chapter 448 of the Laws of 1876, the enactment of the Code of Civil Procedure, sections 56 and 193, being in effect a re-enactment of chapter 486 of the Laws of 1871. This provision, and the rules of the Court of Appeals and the Supreme Court, continued in effect, with amendments unnecessary to consider, until the enactment of chapter 760 of the Laws of 1894. By that enactment section 56 of the Code of Civil Procedure was amended to provide for the establishment of a State Board of Law Examiners to be appointed by the Court of Appeals. The Court of Appeals was required to prescribe rules providing for a *uniform* system of examination, which should govern the State Board of *Law* Examiners in the performance of its duties. The Board was required to certify to the General Term of the department in which the candidate resided, every person who passed the examination, provided such person shall have in other respects complied with the rules regulating admission to practice as attorneys and counselors, which fact shall be determined by said Board before examination. These rules, undoubtedly, had reference to the rules adopted by the Court of Appeals. Upon the certificate of the State Board of Law Examiners that the applicant had passed the examination, and if the General Term find that such person is of good moral character, it shall enter an order licensing and admitting him to practice. In all likelihood, before the adoption of this amendment, the tests adopted by the different General Terms, or their committees, were not standardized, so that an applicant might be admitted in one department, whereas if he were tested in another he would have failed. Having this in mind,

the Legislature provided for a State Board of Law Examiners, who were to conduct their law examinations under a uniform system pursuant to rules adopted by the Court of Appeals. Another change is to be noted, that while the power of admitting still rested with the Supreme Court in a General Term thereof, the candidate was required to be admitted upon a certificate of the State Board of Law Examiners, provided he was of good moral character to be determined by the General Term. The only duty that the General Term had to perform was to pass upon the moral character of the applicant. It had no duty to examine as to learning in the law or otherwise. That this was the view of the Appellate Division is indicated by the fact that in the rules adopted immediately subsequent to chapter 760 of the Laws of 1894, the only provision made by the Appellate Division Justices in connection with admissions was that "Applicants for admission as attorneys and counsellors who have passed the examination prescribed by the rules of the Court of Appeal shall file the certificates of the examiners with evidence of character with the clerk of the Appellate Division * * *." (General Rules of Prac., rule 1.)

Thus there was a division of determination of qualifications: (1) by the State Board of Law Examiners as to the law learning of the applicant, and (2) the moral character of the applicant. Of course, a State Board of *Law Examiners* was not appointed for the purpose of determining the scholastic attainments of the applicant. They were *law* examiners. The General Term was not to examine as to learning, and, therefore, it must have been assumed that when a man appeared before the State Board of Law Examiners he was qualified in scholarly attainments. This method of procedure and practice continued without change, as far as statutes are concerned, except in minor detail. (Laws of 1895, chap. 946; Judiciary Law, §§ 53, 56, 88, 460 and 461, being chap. 35 of the Laws of 1909 [chap. 30 of the Consolidated Laws].) It seems that it must have been the view of the Court of Appeals that academic training was neither within the province of the law examiners nor of the court, because by the rules adopted by the Court of Appeals at that time, provision is made for certain academic training as a condition precedent to admission to examination. The first of these rules which I have been able to find are those adopted by the Court of Appeals on December 2, 1895, to take effect January 1, 1896. The first of these rules were adopted by the Court of Appeals May 1, 1882 (*Matter of Moore*, 108 N. Y. 280). They were amended March 19, 1891, and readopted when the rules were revised October 28, 1892; the latter were amended October 22, 1894. New rules were adopted December 2, 1895, to take

effect January 1, 1896. While all of these require preliminary academic training in specified subjects under the rules of the University of the State of New York it will suffice, however, to make reference to these rules adopted in 1895, as they show the attitude of the Court of Appeals with reference to the laws under discussion, beginning with chapter 760 of the Laws of 1894, by which the State Board of Law Examiners came into existence. After making reference to the necessary law study, either as a clerk or in the law school, they provide that if the applicant be a graduate of a college or university he must have pursued the prescribed course of law study after his graduation. They also provide that applicants who are not graduates of a college or university shall, before entering upon the clerkship or attendance at a law school, or within one year thereafter, pass an examination under the authority and in accordance with the ordinances and rules of the University of the State of New York in English composition, advanced English, first year Latin, arithmetic, algebra, geometry, United States and English history, civics and economics, or in their substantial equivalents as defined by the rules of the university. These rules have been changed from time to time and with each change made more stringent up to the adoption of the last rules, February 20, 1929, in effect March 15, 1929. Here, then, by statute and by rules of the Court of Appeals is a system covering: (1) Academic training as a condition precedent to examination for admission; (2) legal training to be determined by the State Board of Law Examiners; (3) moral character to be passed upon by the Appellate Division.

It is when we come to chapter 253 of the Laws of 1912, by which section 88 of the Judiciary Law was amended, that the difficulty seems to arise. Under that law, upon the certificate of the State Board of Law Examiners that a person has passed the required examination, the Appellate Division of the Supreme Court in the department in which the person shall have resided for at least six months, if it shall be satisfied that such person possessed the character and *general fitness* requisite for an attorney and counselor at law, shall admit him to practice as such attorney and counselor at law in all the courts of this State. The words " general fitness " were added to the word " character " as qualifications for determination by the Appellate Division. It is claimed that it was intended by these words " general fitness " to empower the committee on character and fitness to inquire into the matter of the scholastic qualifications of the candidate for admission. It might also be urged that, if these words included that, they also included legal learning.

Subdivision 1 of section 88 of the Judiciary Law was amended by

chapter 105 of the Laws of 1918, and, in so far as it is here applicable, has been continued in force up to the present time. While the question is not argued here, there can be no doubt that when the Legislature provided for the appointment of a State Board of Law Examiners by the Court of Appeals, and required that there should be a uniform system of examination by the Board under the direction of the Court of Appeals, done undoubtedly for the purpose of avoiding different standards in the departments, it was intended that neither the Appellate Division nor its committee should have any concern with the legal learning of the applicant. The Court of Appeals was authorized by rule to state who were qualified to take the examinations. Pursuant to that authority, the Court of Appeals has from time to time adopted rules which outline the necessary academic training which a candidate must have before he will be admitted to the examination. The fact that the Court of Appeals has adopted rules which set forth the necessary scholarly experience before entrance into the examinations, indicates what that court's view was of the situation. It is hardly likely that these rules bearing upon this subject would have been adopted by the Court of Appeals if that court during all these years, beginning with 1882, had any thought that each department was to establish its own standard in this respect. At one time the Appellate Division Justices had adopted as a part of the rule (General Rules of Prac., rule 1) with reference to applications for admission that " No applicant shall be entitled to receive such a certificate who is not able to speak and to write the English language intelligently." (See Cumming and Gilbert's Official Court Rules, 1910, p. 39.) That provision is no longer in existence. However, in light of the statute and the rules of the Court of Appeals, it seems that it had no place in the rules of the Appellate Division. In my opinion, the words " general fitness " have rather to do with a man's general experience in life, his family life, his associates, his business or other experience, his general reputation and the like.

While the committee has undoubtedly acted in good faith and possesses a keen sense of its responsibility, it has in good faith trespassed upon a province where it does not belong. Neither this court nor its committee may assume authority to which it has no right. An examination of the statutes and rules leads to the conclusion that it was intended to have a uniform, comprehensive scheme of admissions to the bar; (1) scholarly accomplishments, to be determined by the rules of the Court of Appeals; (2) legal learning, to be determined by the State Board of Law Examiners; (3) character and general fitness, to be determined by the Appellate Division through its committee on character and fitness. The

228

words "general fitness" have no reference to scholarly accomplishments, as that term has been used here.

Rule 1 of the Rules of Civil Practice, which are binding upon the Supreme Court (Laws of 1920, chap. 902, as amd. by Laws of 1921, chap. 370), provides in part: "No person shall receive a certificate from any such committee who does not satisfy the committee that he believes in the form of, and is loyal to, the government of the United States." This provision does not call for inquiry into one's learning. That has already been determined.

In the opinion of the court, it is the duty of the committee on character and fitness to certify to this court an applicant for admission who has been certified by the State Board of Law Examiners that he has passed the examination and if the candidate satisfies the committee as to his moral character and general fitness and that he believes in the form of, and is loyal to, the government of the United States. This court does not propose to define the limitations of questions which may be propounded to a candidate in these respects. The power of the committee having been defined, there can be no doubt that the committee, the members of which are lawyers of high standing and who are rendering a fine voluntary public service, will adopt procedure and practice accordingly. The legislation and the rules adopted by the Court of Appeals indicate that it was not intended by the words "general fitness" to call upon the committee on character and fitness to examine into a candidate's academic or legal learning.

The application should be returned to the committee on character and fitness for action in accordance with the foregoing.

Present — LAZANSKY, P. J., RICH, YOUNG, HAGARTY and CARSWELL, JJ.

Application returned to the committee on character and fitness for action in accordance with opinion.