## COURT OF APPEALS.

### December, 1919.

## THE PEOPLE v. HENRY ALFANI.

(227 N. Y. 334.)

(1) ATTORNEYS—PENAL LAW, § 270—PROHIBITION FROM PRACTICING UNLESS DULY LICENSED AND ADMITTED—ACTS CONSTITUTING VIOLATION OF SUCH STATUTE.

The practice of law is not limited to the conduct of cases in courts. It embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and in addition conveyancing, the preparation of legal instruments of all kinds, and in general all advice to clients and all action taken for them in matters connected with the law. An attorney-at-law is one who engages in any of these branches of the practice of law.

(2) SAME—PREPARING LEGAL INSTRUMENTS AND CONTRACTS—WHEN A VIOLATION OF STATUTE.

Under the statute (Penal Law, § 270) it is a misdemeanor for any person to practice as an attorney-at-law or to represent himself as being entitled to practice law, in any manner, without having first been duly and regularly licensed and admitted to practice law in the courts of record of this state; and practicing as an attorney-at-law either in or out of court or holding oneself out as entitled to so practice, is the offense. Therefore, to prepare, as a business, legal instruments and contracts by which legal rights are secured and to hold oneself out as entitled to draw and prepare such, as a business, is a violation of the law.

(3) SAME—NOTARY PUBLIC DRAWING LEGAL PAPERS.

Where defendant, who is not an attorney-at-law, had an office in which he carried on a real estate and insurance business, and also, distinct from such work, drew legal papers, contracts for real estate, deeds,

mortgages, bill of sale and wills, and displayed in his window a sign bearing the words, ''Notary Public—Redaction of all legal papers,'' which defendant explained meant the drawing of legal papers, he was holding himself out to the public as being in the business of drawing papers and legal instruments for hire, and where in pursuance of such business he drew a bill of sale and chattel mortgage for a person and gave advice as to filing the same, for which services he charged and received a fee, defendant was practicing law without a license in violation of section 270 of the statute.

People v. Alfani, 186 App. Div. 468, reversed.

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered February 28, 1919, which reversed a judgment of the Court of Special Sessions of the Peace in the city of New York convicting the defendant of a violation of section 270 of the Penal Law by practicing as an attorney-at-law without a license and directed the discharge of the defendant.

The facts, so far as material, are stated in the opinion.

*Harry E. Lewis, District Attorney (Harry G. Anderson and Ralph E. Hemstreet, of counsel), for appellant.* The Appellate Division erred in deciding that the acts proved by the prosecution did not constitute a violation of section 270 of the Penal Law. (People v. People's Trust Co., 180 App. Div. 494; Matter of Co-operative Law Co., 198 N. Y. 479; Ottaway v. Louden, 172 N. Y. 129; People v. Pierson, 176 N. Y. 201; Taylor v. Crowland Gas & Coke Co., 10 Exch. 293; Burks v. Bosso, 180 N. Y. 341; State Board of Pharmacy v. Gasau, 195 N. Y. 197; Lantry v. Mende, 194 N. Y. 544; 2 Lewis' Sutherland Stat. Const. [2d ed.] § 422; Matter of Pace, 170 App. Div. 818.)

*Peter P. Smith, for respondent.* The crime charged was not proved. (Penal Law, § 270; People v. People's Trust Co., 180 App. Div. 494; People v. Title G. & T. Co., 180 App. Div. 648.) The rule of *ejusdem generis* when applied to the section of the Code under which the defendant was prosecuted

shows that the facts established in this case do not constitute a violation of section 270 of the Penal Law. (State Board v. Gasau, 195 N. Y. 197; Burks v. Bosso, 180 N. Y. 341.)

CRANE, J.:

The defendant was convicted by the special sessions of the city of New York, borough of Brooklyn, of violating section 270 of the Penal Law. He was not an attorney and counselor-at-law, but had for a long period of time drawn legal papers and instruments for hire and held himself out to the public as being in that business. His conviction was reversed by the Appellate Division on the ground that such acts did not constitute practicing law and, therefore, were in no wise contrary to the statute.

The question is fairly presented whether the things done by Alfani are open to the public generally or require a license from the state before a person can perform them for compensation and as an occupation.

Henry Alfani had lived at 475 Park avenue, Brooklyn, New York, since 1888. In the basement he had an office in which he carried on a real estate and insurance business. Distinct from such work he also drew legal papers, contracts for real estate, deeds, mortgages, bills, bills of sale and wills. A large sign placed over his dining room or basement window bore the words in big letters " Notary Public—Redaction of all legal papers." The defendant said " redaction " meant the drawing of legal papers. He was sixty years of age and evidently an Italian, as he testified in part through the Italian interpreter.

On December 27, 1917, two investigators of the state industrial commission called on Alfani at his office and asked him to look after a matter for them. Gallo, one of the men, said his name was George Lecas and that he lived at 23 Cook street, Brooklyn, where he had a soda water stand which together with a stock of cigars, cigarettes, candies and malted milk he had sold to the other man whom he introduced as Geannelis.

The terms of the sale were these: the purchaser agreed to assume the seller's contract to pay five dollars twice a month to the American Siphon Company from which the fountain had been obtained, $65 being still due thereon; the stock was to be $26 cash and the good will $145 to be paid for by Geannelis—$50 that night, $50 January 15th and $45 January 31st. The last payment was to be extended ten days if the purchaser was unable to meet it on time. The defendant advised that a bill of sale be drawn and that the purchaser give back a chattel mortgage. He explained about the necessity of filing the mortgage in the county clerk's office and the foreclosure by a city marshal in case of non-payment. The papers were drawn and executed for which the defendant charged and received four dollars. Before leaving Gallo said: "In case I have any trouble of any kind and I need any legal advice can I come back to you?" to which Alfani replied, "Yes."

By section 270 of the Penal Law it is a misdemeanor for any natural person "to make it a business to practice as an attorney-at-law * * * or to hold himself out to the public as being entitled to practice law as aforesaid, or in any other manner, * * * without having first been duly and regularly licensed and admitted to practice law in the courts of record of this state." To practice or to represent as being entitled to practice law *in any manner is prohibited* to those not lawyers.

The Appellate Division was of the opinion that this section related only to practice connected with court or legal proceedings. The restriction is broader than this for effect must be given to the words "or in any other manner." The words "as aforesaid" have reference to practice in the courts mentioned, and the following "or in any other manner" refer to the practice as an attorney-at-law out of court and not in legal proceedings. Practicing as an attorney-at-law in or out of court or holding oneself out as entitled to so practice is the offense. Not only is this the natural reading of the section but

the lower court in a previous decision held that practicing law was not confined to court work.

In Matter of Duncan (83 S. C. 186, 189; 65 S. E. Rep. 210) it is said: " It is too obvious for discussion that the practice of law is not limited to the conduct of cases in courts. According to the generally understood definition of the practice of law in this country, it embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and in addition conveyancing, the preparation of legal instruments of all kinds, and in general all advice to clients and all action taken for them in matters connected with the law. An attorney-at-law is one who engages in any of these branches of the practice of law."

Thornton on Attorneys-at-Law, in section 69, defines the practice of law in the same terms.

In Eley v. Miller (7 Ind. App. 529, 535) the court stated: " As the term is generally understood, the practice of law is the doing or performing services in a court of justice in any matter depending therein, throughout its various stages, and in conformity to the adopted rules of procedure. But in a large sense it includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be depending in a court."

To the same effect are Barr v. Cardell (173 Iowa 18, at page 31), and Savings Bank v. Ward (100 U. S. 195). (See also, People v. Schreiber, 250 Ill. 345; People v. Taylor, 56 Colo. 441.)

To make it a business to practice as an attorney-at-law not being a lawyer is the crime. Therefore, to prepare as a business legal instruments and contracts by which legal rights are secured and to hold oneself out as entitled to draw and prepare such as a business is a violation of the law.

It does not lead us to a conclusion to investigate the powers

of notaries public under the Roman law or of scriveners and notaries under the English system past or present. The legislators who enacted section 270 knew what practicing law was in this state as many of them were of the profession and they were dealing with that as carried on here at the present day. It is common knowledge for which the above authorities were hardly necessary, that a large, if not the greater, part of the work of the bar to-day is out of court or office work. Counsel and advice, the drawing of agreements, the organization of corporations and preparing papers connected therewith, the drafting of legal documents of all kinds, including wills, are activities which have long been classed as law practice. The legislature is presumed to have used the words as persons generally would understand them, and not being technical or scientific terms " to practice as an attorney-at-law " means to do the work, as a business, which is commonly and usually done by lawyers here in this country.

The reason why preparatory study, educational qualifications, experience, examination and license by the courts are required, is not to protect the bar as stated in the opinion below but to protect the public. Similar preparation and license are now demanded for the practice of medicine, surgery, dentistry and other callings, and the list is constantly increasing as the danger to the citizen becomes manifest and knowledge reveals how it may be avoided.

Why have we in this state such strict requirements for admission to the bar? A regents' certificate or college degree followed by three years in a law school or an equivalent study in a law office marks the course to a bar examination which must finally be passed to entitle the applicant to practice as an attorney. Recognizing that knowledge and ability alone are insufficient for the standards of the profession, a character committee also investigates and reports upon the honesty and integrity of the man. And all of this with but one purpose in

view and that to protect the public from ignorance, inexperience and unscrupulousness.

Is it only in court or in legal proceedings that danger lies from such evils? On the contrary, the danger there is at a minimum for very little can go wrong in a court where the proceedings are public and the presiding officer is generally a man of judgment and experience. Any judge of much active work on the bench has had frequent occasion to guide the young practitioner or protect the client from the haste or folly of an older one. Not so in the office. Here the client is with his attorney alone, without the impartial supervision of a judge. Ignorance and stupidity may here create damage which the courts of the land cannot thereafter undo. Did the legislature mean to leave this field to any person out of which to make a living? Reason says no. Practicing law as an attorney likewise covers the drawing of legal instruments as a business.

That such work is properly that of an attorney seems to be recognized by other provisions of law. Section 88 of the Judiciary Law (Cons. Laws, ch. 30), relating to the disbarment of attorneys, makes it the duty of the Appellate Division in each final order of suspension to forbid the giving to another of an opinion as to the law or its application or of any advice in relation thereto.

Section 835 of the Code of Civil Procedure provides in substance that an attorney shall not be allowed to disclose a communication made by his client to him or his advice given thereon, in the course of his professional employment. Such communications have referred to a deed (Root v. Wright, 84 N. Y. 72); an affidavit (Williams v. Fitch, 18 N. Y. 546); a chattel mortgage (Yates v. Olmsted, 56 N. Y. 632) and a bill of sale (Britton v. Lorenz, 45 N. Y. 51).

Also the summary power of courts over attorneys may be exercised in matters unrelated to court proceedings, the rule being stated in Matter of Husson (26 Hun, 130).

Even the instances cited below of scriveners and notaries

public in foreign lands drawing legal papers sustain this contention, as the laws require such to be trained and experienced men. (Halsbury's Laws of England, vol. 2, sec. 636; Jenks Short History of English Law, pp. 201, 202; 6 & 7 Vict. ch. 90, passed 1843.)

The duties of notaries public here are defined by section 105 of the Executive Law (Cons. Laws, ch. 18). Only in the name is there a correspondence to the continental official.

All rules must have their limitations, according to circumstances and as the evils disappear or lessen. Thus a man may plead his own case in court, or draft his own will or legal papers. Probably he may ask a friend or neighbor to assist him.

We recognize that by section 270 and also 271 a person, not a lawyer, may appear for another in a court not of record outside cities of the first and second class. The results cannot be serious. The cases are generally of minor importance to the parties; such occasions are seldom frequent enough to make it a business, and the procedure is so informal as to constitute the judge really an arbiter in the dispute.

We must, therefore, in harmony with these views, reverse the judgment of the Appellate Division and affirm that of the Special Sessions.

HISCOCK, Ch. J. I concur in the conclusions reached by Judge Crane on the ground that there was evidence consisting of defendant's sign and repeated acts which permitted the trial court to find that the defendant held himself out to the public as being entitled to and did practice law in violation of the provisions of section 270 of the Penal Law.

McLAUGHLIN, J. (dissenting). The defendant was convicted in the Court of Special Sessions, in the borough of Brooklyn, of violating section 270 of the Penal Law. He appealed to the Appellate Division, Second Department, where the judgment of conviction was reversed and he was discharged. The People, by permission, appeal to this court.

So much of the section of the Penal Law under which the conviction was obtained as is material to the question presented on appeal, reads as follows: " Practicing or appearing as attorney without being admitted and registered. It shall be unlawful for any natural person to practice or appear as an attorney-at-law or as attorney and counsellor-at-law for another in a court of record in this state or in any court in the city of New York, or to make it a business to practice as an attorney-at-law or as an attorney and counsellor-at-law for another in any of said courts * * * or to hold himself out to the public as being entitled to practice law as aforesaid, or in any other manner, * * * without having first been duly and regularly licensed and admitted to practice law in the courts of record of this state * * *."

The defendant, at the time stated in the information, was a notary public, living at 475 Park avenue, Brooklyn, in the basement of which he had a small office for the transaction of business. Over the entrance of the office was the following sign:

| "Agency of the Great Eastern Casualty Co. of New York | Notary Public Redaction of all Legal Papers | Real Estate Operator Loan & Insurance Broker Established 1888." |
|---|---|---|

On the 27th of December, 1917, one Gallo, special investigator of the state industrial commission, in company with one Geannelis, entered defendant's office and he asked them what they wanted. Gallo stated that he was selling his store, which consisted of a soda water stand, together with a stock of cigars, cigarettes, etc., to Geannelis, for a certain consideration, which was named, part of which was to be paid down and the balance in installments. Gallo also stated there was a certain amount due to the American Siphon Company on the purchase price of the soda water fountain, which Geannelis was to assume and pay. The defendant advised that Gallo give a bill of sale to Geannelis and that he give a chattel mortgage for the amount remaining unpaid. He also explained it would be necessary

to file the mortgage in the county clerk's office, so that the same could be foreclosed by the city marshal in case of nonpayment. His suggestions as to the bill of sale and mortgage were followed and he thereupon prepared the same, for which he was paid four dollars.

It is contended that this transaction, together with the sign, amounted to a violation of the provisions of the statute quoted. I have been unable to reach this conclusion.    The statute, unless something is read into it which does not there appear, is to prohibit a natural person practicing or appearing as an attorney-at-law in the courts mentioned, or to hold himself out to the public as being entitled to practice in such courts.    The defendant did neither.    Clearly, the drafting of the bill of sale and chattel mortgage was not practicing or appearing as an attorney-at-law in any court.    Nor did the words on the sign, " Redaction of all legal papers," indicate that he was holding himself out as entitled to practice in such courts.    The words " in any other manner," upon which stress is laid, relate to what precedes them in the sentence, viz., the courts referred to. The phrase, although general in its nature, is limited and qualified by the prior specific designations.    (Burks v. Bosso, 180 N. Y. 341; People v. Richards, 108 N. Y. 137.)    The rule of *ejusdem generis* applies.    Where the enumeration of specific things is followed by some more general word or phrase, such general word or phrase is held to refer to the things of the same kind.    (State Board of Pharmacy v. Gasau, 195 N. Y. 197.)

At the time defendant was convicted it was not illegal, and is not now, for natural persons to draft papers usually intrusted to lawyers.    Judicial notice may be taken of the fact that in the rural districts of the state leases, deeds, bills of sale, chattel mortgages, wills and other instruments creating legal obligations are frequently prepared by laymen, notaries public and justices of the peace.    Indeed, a natural person could, at the time defendant was convicted, appear for another in a Magis-

trate's Court, or before a justice of the peace, except in cities of the first and second class, and receive pay therefor. This practice is recognized by section 271, which prohibits a person from receiving compensation for appearing as attorney in a court before any magistrate in any city of the first or second class, unless admitted to practice as an attorney and counsellor in the courts of record of the state. That the Legislature did not intend to prohibit such practice is apparent from the fact that at its last session it amended section 271, so that it now includes cities of the third, as well as those of the first and second class. (Laws of 1919, chap. 417.)

To give to the words " in any other manner " the legal effect suggested would prohibit a natural person anywhere in the state from drawing a legal paper of any description, or appearing in any court. This the Legislature has not yet indicated its intent to do. (See, also, People v. Title Guarantee & Trust Co., decided herewith.)

One of the well-settled rules of statutory construction is that statutory offenses cannot be established by implication and that acts in and of themselves innocent and lawful cannot be held to be criminal, unless there is a clear and unequivocal expression of the legislative intent to make them such. (People v. Phyfe, 136 N. Y. 554.)

I am of the opinion that the defendant was not guilty of violating section 270 of the Penal Law; that the Appellate Division was right in reversing the conviction and discharging him; and its judgment should, therefore, be affirmed.

CHASE and COLLIN, JJ., and HISCOCK, Ch. J., in memorandum, concur with CRANE, J.; HOGAN, J., concurs with McLAUGHLIN, J.; CUDDEBACK, J., deceased.

Judgment reversed, etc.