JOHN J. BENNETT, JR., Attorney-General of the State of New York, Plaintiff, *v.* H. ELY GOLDSMITH, Defendant.

Supreme Court, Special Term, New York County, March 8, 1938.

*John J. Bennett, Jr., Attorney-General, in propria persona.*

*James E. Wilkinson,* for the defendant.

NOONAN, J. This application for a temporary injunction against the defendant is brought by the Attorney-General of the State of New York to prohibit the defendant from engaging in the alleged practice of law. Concededly the defendant is not a duly-licensed attorney admitted to practice in the courts of this State.

It is alleged in the moving affidavit that the Attorney-General received a verified petition from the Federal Bar Association of New York, New Jersey and Connecticut, requesting him to bring proceedings against the defendant pursuant to section 1221-a of the Civil Practice Act.

As a result of that petition, an investigation was made by the Attorney-General into the practice of the defendant, and numerous witnesses were examined, including the defendant himself. This investigation disclosed that the defendant had procured immigration visas during the past year for many persons. These witnesses testified that the defendant informed them that for an agreed fee he would prepare all the papers and documents necessary for the procurement of the visas. The examination further disclosed

that if affidavits were requested by the immigration authorities or other departmental branches of the government, the defendant would prepare them and actually did prepare the same. In the course of his alleged practice the defendant used a form of contract as a retainer between his " client " and himself, and advertised in certain foreign language newspapers, and also used the radio as an advertising medium. One of these newspaper advertisements read, " In case you cannot become a citizen visit H. Ely Goldsmith, 60 E. 42 St., Murray Hill 6–2686 who can help you to lawful immigration by way of Canada." There is also the charge that the defendant sent cards " to attorneys all over creation " in which the defendant stated that he was a consultant and specialist in matters relating to the entry, stay, deportation and naturalization of aliens.

These cards also contained the following: " Legalization of previous illegal entries. Usual forewording arrangements to attorneys only."

It is further alleged that the defendant in some cases prepared trust agreements to be entered into between the immigrant and a bank or trust company partly for the purpose of assuring the payment of the defendant's fee in case his client obtains the proper visa. A copy of this trust agreement is attached to the moving papers.

Defendant in his answering affidavit denies this charge, and states that a reading of the trust agreement " will disclose that that was not any part of the purpose of the deposit with the bank of trust funds. If, however, such were the purpose, defendant urges that there would have been nothing illegal in the procedure and, furthermore, the drawing of such agreement is not prohibited by the Penal Law." An examination of the form of trust agreement which was sent by the defendant to his clients as a part of " a circular explaining my services " supports the charge of the plaintiff. The defendant concedes that he sent out a card to attorneys everywhere which advertised his business as the " legalization of previous illegal entries," and that he used the foreign language newspapers and the radio as an advertising medium. The word " legalization " in the cards sent out by him supports the inference that whatever is necessary legally to legalize an unlawful entry was to be performed by him.

Admittedly, the defendant assembles, and if necessary prepares, all necessary documents and papers so as to legalize the entry of immigrants. What he offers to do in that connection is partly set forth in the circular sent to his prospective clients (Exhibit Y, attached to the moving papers). His fee ranged from $200 to $300,

depending on the circumstances, of which $50 to $75 was paid to him, the balance to be paid when the visa was secured by the immigrant.

For the purpose of this motion sufficient has been stated, in my opinion, to justify the issuance of a temporary injunction on the ground that the acts of the defendant constituted the practice of law within the purview of section 270 of the Penal Law, which makes it a misdemeanor for any natural person " to make it a business to practice as an attorney-at-law * * * or to hold himself out to the public as being entitled to practice law as aforesaid, or in any other manner, * * * without having been first duly and regularly licensed and admitted to practice law in the courts of record of this State." The moving papers show that the defendant is employed in the " business " of obtaining immigration visas for his clients. In *People* v. *Meola* (193 App. Div. 487, 489), it was said that (p. 355) " A series of acts may constitute a business." It has been held that a person may be engaged in the practice of law even though he does not appear in court. (*People ex rel. Holzman* v. *Purdy*, 162 N. Y. Supp. 65; *People* v. *Alfani*, 227 N. Y. 334.) In the case of *People* v. *Alfani* (*supra*, p. 672) the proof showed that the defendant maintained a sign over his office reading in part, " Notary Public — Redaction of All Legal Papers." The defendant there prepared a bill of sale and chattel mortgage in connection with the sale of a soda water stand for which he charged four dollars. The Court of Appeals upheld a judgment convicting him for a violation of section 270 of the Penal Law on the ground that he held himself out to the public as qualified to draw legal papers.

The case of *People* v. *Title Guarantee & Trust Co.* (227 N. Y. 366), relied upon by the defendant, is readily distinguishable. The opinion of HISCOCK, Ch. J., specifically points out (at p. 378) that the case did not involve the defendant's holding itself out " as engaged in the business of preparing instruments of the character involved in this proceeding or other ones." The narrow question decided by the court was (p. 371) " whether a corporation which, without giving any advice leading to and consummated therein, prepares a bill of sale and chattel mortgage by filling out blanks upon and in accordance with the specific direction of a purported customer, is rendering legal services or holding itself out as entitled to practice law." The court went on to state that " Under the circumstances of this case the general inquiry really is reduced to the narrow one whether this amounted to rendering legal services, for as we have pointed out there is no evidence that the appellant held itself out as entitled to practice law unless it did so by performing

legal services whereby law would be practiced." Even on the narrow question determined by the court in that case three of the seven judges dissented. The case is clearly different in its facts from the instant one, where the defendant held himself out as qualified to legalize illegal entries into the country in addition to supervising the filling out of the necessary documents, and advising applicants regarding the documents required and the method of procedure to be followed by them.

The motion for a temporary injunction is granted. The cause will, however, be set down to be called for trial at Special Term, Part III, on the 16th day of March, 1938. Settle order.