**In re: Oscar PEREZ, Debtor.**

**No. 02–86919.**

United States Bankruptcy Court, E.D. New York.

March 18, 2005.

Oscar Perez, Pro se Debtor.

Amin Khalil Hussain–El, for himself.

Stan Y. Yang, Esq., Office of U.S. Trustee.

## MEMORANDUM DECISION REFERRING AMIN KHALIL HUSSAIN–EL TO THE SUPREME COURT OF NEW YORK, APPELLATE DIVISION, SECOND DEPARTMENT FOR SANCTIONS FOR ENGAGING IN THE UNLAWFUL PRACTICE OF LAW

STAN BERNSTEIN, Bankruptcy Judge.

### Issue

The issue is whether Amin Khalil Hussain–El (Hussain–El), the debtor's former bankruptcy counsel, should be referred to the Supreme Court of New York, Appellate Division, Second Department for sanctions for practicing law during his period of suspension?

### Background

The debtor, Oscar Perez, filed for relief under chapter 13 of the Bankruptcy Code on September 27, 2002. Before filing his petition, the debtor had retained Hussain–El as bankruptcy counsel. On May 17, 2004, Hussain–El was suspended from the practice of law by Order of the New York Supreme Court, Appellate Division, Second Department. Under the terms of his suspension Hussain–El was "commanded to desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) *giving to another an opinion as to the law or its application or any advice in relation thereto,* and (4) holding himself out in any way as an attorney and counselor-at-law." NEW YORK LAW JOURNAL (May 17, 2004) (emphasis added).

On September 23, 2004, several months after Hussain–El's suspension, America's Servicing Company, the loan servicer for the current holder of the Chase Manhattan Mortgage,[1] filed a Motion to Vacate the Automatic Stay against the real property know as 30 Penndale Drive, Amityville, New York, 11701 (Motion). The debtor filed a pleading in opposition to the Motion on October 14, 2004 (Opposition)(attached hereto as Exhibit A).

The Opposition bears a seal that the debtor signed it before a notary, Patricia Nagala–El. Since the Opposition included several terms or phrases that are not found in ordinary English, this readily suggested that the debtor did not prepare this pleading on his own, and may, in fact, have been assisted by one or more persons who were not authorized to practice law.

---

1. A note in the principal amount of $104,908.00 was executed by the debtor on May 27, 1999, secured by a mortgage and delivered to Cross Island Capital Corp. On the date of closing, there were several successive assignments of the note and mortgage, first to PMCC Mortgage Corp., and then to Chase Manhattan Mortgage Corporation. Thereafter, the note and mortgage were assigned to the Secretary of Housing and Urban Development and to SFJV–2002–1, LLC, respectively. America's Servicing Company is the loan servicer for the last assignee of record. Under the debtor's plan this secured creditor is referred to as "Chase Manhattan Mortgage Corporation".

This District is beset with petitions, schedules, and pleadings prepared by persons who are not authorized to practice law, including at least one store-front group calling itself "We the People." *See, e.g., In re Barcelo*, 313 B.R. 135 (Bankr. E.D.N.Y.2004). Unfortunately, the unauthorized advice many debtors are given is wrong or misleading, causing prejudice to the *pro se* debtors in their search for bankruptcy relief. Moreover, there have been a few disbarred lawyers who purport to be nothing more than bankruptcy petition preparers, but other judges in this District and in others have issued published and unpublished opinions imposing sanctions upon these disbarred lawyers for violating the provisions under section 110 of the Bankruptcy Code which regulate bankruptcy petition preparers. *See, e.g., In re Brummitt*, 323 B.R. 522, 525 (Bankr.M.D.Fla.2005)(stating section 110 applies to disbarred attorneys).

Under these circumstances, the Court issued an order to the debtor, with notice to the chapter 13 standing trustee and to the United States trustee, directing the debtor to disclose the identity of the notary and of any others who may have assisted him in preparing and filing the Opposition.[2] The hearing was held on the return date of November 16, 2004. During the direct examination of the debtor, which began as scheduled at 9:30 a.m., Hussain–El walked into the courtroom at 10:35 a.m. and moved to the podium. When asked by the Court why he was present, he answered that he had "notice[d] on the computer that the Court had certain questions,

so rather than have the Court spend a lot of time, [he] thought maybe [he could] assist the Court in answering any questions." November 16, 2004 Transcript,[3] p. 29, ll: 17–20. Upon the completion of the direct examination of the debtor by Stan Yang, Esq., Trial Counsel for the United States trustee, Hussain–El then affirmed on the record that he would tell the truth and proceeded to answer questions posed to him by counsel for the United States trustee and by the Court. Based upon the testimony of the debtor and of Hussain–El, it was readily apparent to the Court that this suspended lawyer gave legal advice and assistance to the debtor.

### Discussion

Under *Section 478 of the New York Judiciary Law,*

> [i]t shall be unlawful for any natural person to practice ... as an attorney-at-law or as an attorney and counselor-at-law for a person other than himself in a court of record in this state, or to furnish attorneys or counsel or an attorney and counsel to render legal services, or to hold himself out to the public as being entitled to practice law as aforesaid, or in any other manner, ... without having first been duly and regularly licensed and admitted to practice law in the courts of record of this state ....

*N.Y. Jud. Law § 478* (McKinney 2004). *Section 486 of the New York Judiciary Law* extends these prohibitions to suspended attorneys, and makes any violation thereof a misdemeanor.[4]

---

**2.** The Court through its law clerk called the Suffolk County Offices in an effort to obtain the notary's address, but the Court was advised that the County did not disclose this information. This precluded the Court from sending notice directly to the notary of the hearing.

**3.** Hereinafter, all references to the trial transcript will be designated "Tr."

**4.** *Section 486* reads: "Any person whose admission to practice as an attorney and counselor-at-law has been revoked or who has been removed from office as attorney and counselor-at-law or, being an attorney and counselor-at-law, has been convicted of a felo-

The New York Courts have published numerous opinions describing what constitutes the "practice of law." It is well-settled that practicing law is much broader than simply appearing before a court during a legal proceeding. *People v. Alfani*, 227 N.Y. 334, 337, 125 N.E. 671, 672 (1919). The Court in *Alfani* found that "[a]ccording to the generally understood definition of the practice of law in this country, it embraces the *preparation of pleadings and other papers* incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and in addition conveyancing, the preparation of legal instruments of all kinds, and in general all *advice* to clients and all action taken for them in matters connected with the law". *Id.* at 337–38, 125 N.E. at 673 (quoting *Matter of Duncan*, 83 S.C. 186, 189, 65 S.E. 210 (1909))(emphasis added). Therefore, under New York State law, the practice of law includes the giving of legal advice and preparing legal instruments, especially pleadings. *See Spivak v. Sachs*, 16 N.Y.2d 163, 166, 211 N.E.2d 329, 330, 263 N.Y.S.2d 953, 955 (1965); *see also, New York County Lawyers' Ass'n v. Dacey*, 283 N.Y.S.2d 984, 989–91, 28 A.D.2d 161, 165–66 (1st Dep't 1967), *rev'd on other grounds,* 21 N.Y.2d 694, 234 N.E.2d 459, 287 N.Y.S.2d 422 (1967).

In a case similar to this one, a New York state court disbarred an attorney for preparing divorce papers for a former client while he was suspended from the practice of law. *In re Rosenberg*, 661 N.Y.S.2d 888, 242 A.D.2d 829 (3rd Dep't 1997). The court found that preparing divorce papers constituted the practice of law and, combined with some other extenuating circumstances, warranted the attorney's disbarment. *Id.* Therefore, in *Rosenberg*, the court also found that preparing a pleading constituted the practice of law.

### Findings of Fact

1. The debtor, Oscar Perez, was born in El Salvador. He graduated from high school in 1991 and he moved to the United States of America in 1992. The debtor has worked as a second pressman in a printing shop for the past five years. He can only read and understand "some" English. Tr. at 9–10. In fact, it was very difficult to elicit understandable testimony from the debtor without extraordinary effort, for the questions and his answers often had to be repeated and rephrased. He has not yet been naturalized as a U.S. citizen. Tr. at 8.

2. As stated above, he filed a petition for relief under chapter 13 of the Bankruptcy Code on September 27, 2002. The docket entries show that at the time of the filing, he was represented by Hussain–El.

3. The plan had to be amended at least four times so that the proper and full amount of the arrears could be paid to both the first mortgagee, Chase Manhattan, and the second mortgagee, Wells Fargo Financial. The debtor's fourth amended plan was confirmed by Order of this Court dated March 26, 2003.

4. As stated above, the loan servicer for the current holder of the Chase Manhattan Mortgage filed its Motion on September 23, 2004, alleging that the debtor was delinquent in his mortgage loan account by seven monthly installments,

ny or has been *suspended* from practice and has not been duly and regularly reinstated, who does any act forbidden by the provisions of this article to be done by any person not regularly admitted to practice law in the courts of record of this state, unless the judgement, decree or order suspending him shall permit such act, shall be guilty of a misdemeanor." *N.Y. Jud. Law § 486* (McKinney 2004)(emphasis added).

which were payable directly and on time to the mortgagee or its servicing agent.

5. The debtor received the Motion in the mail in late September. He testified that he did not understand what the Motion meant (Tr. at 31), so on October 1, 2004, the debtor took the Motion to the office of Hussain–El[5] (Tr. at 57) whom he believed still to be his lawyer in this case (Tr. at 30).

6. Hussain–El reviewed the papers and highlighted for the debtor the critical allegation in the Motion; i.e. the breach of the mortgage loan agreement by the debtor's failure to pay seven accrued payments. Tr. at 44–47. At the hearing, Hussain–El stated that he told the debtor to look for copies of the payments he had made on the Chase Manhattan Mortgage and that the debtor returned "a day or so later" with two payments. Tr. at 46–47, l: 25. Based on the record, the debtor did not return until two weeks later on October 14, 2004. The debtor testified that Hussain–El advised him that he would need to go to Court and provide proof that he had made the mortgage payments that the Motion claimed were not made. Tr. at 13.

7. The debtor testified that Hussain–El told him that he could not accompany him to Court for the hearing on the Motion because he had "some problems." Tr. at 23, l: 15, 33. The debtor further testified that at no time did Hussain–El specify the nature of his "problems;" specifically, he never told the debtor orally or in writing that he was no longer authorized to practice law. Tr. at 23–24. In contrast, Hussain–El testified he told the debtor on October 14th that he was no longer able to practice law, but Mr. Perez did not understand what he was saying. Tr. at 44. Hussain–El also stated that he had sent a letter to each of his clients in all of his open cases stating he had been suspended, but he presented no substantiation of this statement at the hearing or afterwards.[6] Tr. at 49.

8. Hussain–El referred the debtor to another attorney, Richard Artura, Esq., an experienced consumer bankruptcy lawyer. Tr. at 24. Exactly when this referral occurred is unclear from the record. The debtor testified that he made several efforts to reach Mr. Artura at his office, but he was unsuccessful as of the hearing date in that effort.[7] Tr. at 26.

---

5. Although there is some confusion over the dates the debtor visited Hussain–El's office, the Court infers that the debtor's first visit to Hussain–El's office was October 1, 2004, not October 14, 2004, based on the debtor's direct testimony (Tr. at 57), the testimony of Hussain–El that the debtor made two visits to Hussain–El's office in October (Tr. at 46–47), the fact that the debtor has a receipt from Hussain–El dated October 1, 2004 (Tr. at 53), and the fact that the Opposition papers were filed on October 14, 2004.

6. A partial and logical explanation may be that once the chapter 13 plan had been confirmed, Hussain–El believed that his representation of the debtor ceased, and took the view that, therefore, the case was no longer "open." Of course, the case remained open because the plan would run for a term of sixty

months from the date of confirmation. When the Motion was filed, the confirmed plan had at least three years to run, assuming that no material defaults had occurred which would lead to dismissal of the case. Perhaps this also meant that if any motions were filed against the debtor after the date of entry of the order of confirmation, he would consider renewing the representation for the payment of additional fees. Nevertheless, the Court is satisfied that the debtor did not understand that the representation had been terminated upon the entry of the order confirming the plan.

7. With the assistance of the Court, the debtor was able to retain Mr. Artura to represent him in negotiating an arrangement with the secured creditor which had filed the Motion.

9. Although Hussain–El knew or should have known that the debtor was having considerable difficulty understanding English, at no time did Hussain–El enlist the assistance of a translator to explain his suspension from practice to the debtor despite the fact that his sister-in-law, who worked in the same small office building, was fluent in Spanish. Tr. at 40, 44. Hussain–El's defense that he had no difficulty in speaking with the debtor and gaining the latter's understanding was wholly self-serving and completely unpersuasive. Hussain–El gave no evidence that he was a competent and fluent speaker of Spanish, and it was irrefutable that the debtor had considerable difficulty answering the simplest questions directed to him in English during the hearing.

10. Hussain–El acknowledged that he prepared and physically "typed" the Opposition based on the debtor's representations and the proof of payment the debtor provided. Tr. at 44–47.

11. The implication from Hussain–El's responses was that he was only acting as a bankruptcy preparer service, and not as a lawyer. Hussain–El further "explained" that he drafted the papers only after he was unable to reach the Movant's attorney to negotiate an extension of the time to object and he was unable to reach another attorney to help the debtor prepare an objection; he only helped the debtor because the debtor was under a deadline to object. Tr. at 45.

12. The debtor testified that he signed the Opposition in the presence of Hussain–El without reading it. Tr. at 17, 34. The Opposition was later notarized by Hussain–El's sister-in-law outside the presence of the debtor. Tr. at 19–20. Hussain–El conceded that it was he, not the debtor, who filed the Opposition with the Court. Tr. at 47.

13. The debtor testified that over the years he has paid Hussain–El approximately $4,000 for the services rendered in this Chapter 13 case. Tr. at 20. Hussain–El countered by testifying that his fees were more in the neighborhood of $2,000, but he produced no record of the payments at the hearing or thereafter. Tr. at 39. According to his affidavit initially filed with the Court, Hussain–El represented that he had been paid a retainer of $1650. The Court finds that the debtor's testimony is more credible than Hussain–El's casual and off-handed statements.

14. More importantly to the point of unauthorized practice of law, the debtor provided the Court with a receipt dated October 1, 2004, for a $350 payment to Hussain–El for "motion and consultation." Tr. at 53, ll: 7–8. Hussain–El testified this was for services rendered in February 2004, before he was suspended. Tr. at 54. The debtor was not certain what services that payment related to. Tr. at 57. But given the context in which this payment was made; i.e. the need to file opposition to the Motion, the timing and amount of the payment, and the very description of the service, this Court finds that the $350 payment was for Hussain–El's drafting of the October 14th Opposition. This was an elementary case of Hussain–El's demanding payment for a contemporary legal service, namely, advising the debtor and drafting a written response to the Motion.

15. The demand for payment and the acceptance of a fee for legal services described as "motion and consultation" months after Hussain–El was suspended is clear and convincing evidence that he intentionally engaged in the practice of law.

### Conclusion

Hussain–El's argument that he only assisted the debtor because the debtor was under a deadline and because Hussain–El was unable to enlist the services of

another lawyer to draft the Opposition carries no probative weight. The existence of deadlines does not grant Hussain–El any authority to practice law in violation of his order of suspension. Hussain–El's second argument that he merely typed exactly what the debtor told him and thus he was not practicing law is also rejected because not only is it not credible, but it is directly contrary to the facts. The Court finds it unlikely that the debtor could have dictated a pleading on a matter he could not understand. It would be ludicrous to find that the debtor whose mastery of formal English and of bankruptcy law is marginal at best, could, in fact, draft and dictate the text of the Opposition on his own, with Hussain–El acting solely as a secretary typing the pleading.

■ Based on the foregoing, this Court finds Hussain–El intentionally and without lawful excuse engaged in the unlawful practice of law in violation of his suspension and collected a contemporaneous fee for the "service." Under the circumstances, Hussain–El must return the $350 to the debtor since he has no right to retain payment for unauthorized legal services in violation of the terms and conditions of his suspension.

In addition, Hussain–El may have committed separate and independent violations under section 110 of the Bankruptcy Code as a non-compliant bankruptcy petition preparer service. These violations will be the subject of an Order to Show Cause that will be issued by this Court simultaneously with the entry of this Memorandum and Order.

### Disposition

Based on his unlawful practice of law, this Court refers Amin Khalil Hussein–El to the Supreme Court of New York, Appellate Division, Second Department for any additional discipline and sanctions beyond his existing suspension.

It is also ordered that Amin Khalil Hussain–El shall return to the debtor $350 for the illegal payment for unauthorized legal services within ten days of the entry of this Order by means of a cashier's check or money order, substantiated by the filing of an affidavit of payment, and evidenced by a copy of the check or money order, within two business days after the payment is physically delivered to the debtor at his residence or place of employment.

### Exhibit A

### OPPOSITION TO MOTION TO VACATE STAY

OSCAR PEREZ, the debtor herein, states that the statements made herein are true and accurate:

1. On or about September 27, 2002, I filed the within Chapter 13 Petition.

2. I continually made my mortgage and trustee payments; although I had a problem in June with my trustee payments, but I caught up.

3. On or about September 29, 2004, I received a Notice of Motion to vacate the stay in my case.

4. This affirmation is submitted in opposition to the Motion of America Servicing Company to vacate the automatic stay in my case herein.

5. Debtor denies that he is seven payments behind. I requested a payment history and it supports the seven months, I originally sent payments to Chase Manhattan Bank and I guess those payments are not reflected on my mortgage history.

6. I suggest that the America Servicing Company confirm the number of payments Chase received since my bankruptcy filing and then what they received after the assignment from Chase.

7. My records show two payments behind and I sent those two payments to America's Servicing Company.

WHEREFORE, the debtor respectfully requests that the Court deny the motion of Nations Credit.

Correspondence Address:
America's Servicing Company
Customer Service Department
P.O. Box 981
Frederick, MD 21705-0981

## For Informational Purposes

#BWNDXCT
#1061172002524099#          000027

OSCAR PEREZ
30 PENNDALE DR
AMITYVILLE NY 11701-2041

Illulluulllullluuulldlllluuldulllulldluullul

## Next Payment 10/01/04

| | |
|---|---|
| Payment | $1,399.66 |
| Other payment(s) | $14,489.46 |
| Late charges | $419.38 |
| Other charges | $ .00 |

| | |
|---|---|
| Total payment | $16,308.50 |

### Monthly Mortgage Statement

Customer Service
M-Th 8am - 9pm ET
F- 8am - 6pm ET

*Phone number*
(888) 828-2377

*Fax number*
(301) 815-6905

Home loan facts
*Property address*
30 PENNDALE DR
AMITYVILLE NY 11701
Principal balance as of 09/20/04
$100,701.96
This is your principal balance
only. For your pay off balance,
please call Customer Service.
*Interest rate*
8.500%
*Interest paid - year to date*
$5,011.26
*Escrow balance - year to date*
$4,354.42-
*Taxes paid - year to date*
$2,828.52

*Loan number*
1172002524

*Regular mail*
1 Home Campus
MAC # X2501-01Z
Des Moines, IA 50328-0001

*Overnight mail*
1 Home Campus
Mac # X2501-01Z
Des Moines, IA 50328

### Important Messages
*This statement is for informational
purposes only. Our records indicat
that your loan is protected by a
bankruptcy plan. The attached
coupon reflects the calendar due
date, not the contractual due date
of the bankruptcy plan. If you
have any questions regarding
your loan, please contact your
bankruptcy attorney or our office.*

### Activity Since Your Last Statement

| Date | Description | Total | Principal | Interest | Escrow | Late charge | Misc |
|---|---|---|---|---|---|---|---|
| 09/20 | PAYMENT | $2,420.00 | $92.69 | $713.96 | $479.66 | SUSPENSE | $1,133.69 |

*This statement is for informational purposes only and is being provided as a courtesy should you
voluntarily decide to make your loan payments. This statement should not be construed as an attempt
to collect a debt or a demand for payment contrary to any protections you may have received
pursuant to your bankruptcy case.*

*If you have received a discharge, and the loan was not reaffirmed in the bankruptcy case, we will
only exercise our rights as against the property and we are not attempting any act to collect
the discharged debt from you personally.*

(Keep upper portion for your records.)

## Fleet

**PERSONAL MONEY ORDER**

62967241
NOT VALID OVER $1000

Memo: ___
Date ___

NOTE: THE PURCHASER OF THIS MONEY ORDER AGREES TO INSERT IN INK, THE PAYEE'S NAME AND ADDRESS, AND ASSUMES ALL RESPONSIBILITY FOR ALL EVENTS MADE POSSIBLE BY FAILURE TO DO SO.

PAY
TO THE ORDER OF  HSC

****700*DOLLARS*AND*00*CENTS*

Horne Campus Mine #2501-0001
Des Moines, IA 50328-0001

RETAIN THIS COPY FOR YOUR RECORDS

82-40/1021
Issued by Integrated Payment Systems Inc. Englewood, Colorado
Payable at Wells Fargo Bank Grand Junction - Downtown, N.A. Grand Junction, Colorado

**NON NEGOTIABLE**
SIGNATURE
STREET ADDRESS
CITY/STATE/ZIP
446 94002 FLEET BANK

---

## Fleet

**PERSONAL MONEY ORDER**

62967241
NOT VALID OVER $1000

Memo: ___
Date ___

NOTE: THE PURCHASER OF THIS MONEY ORDER AGREES TO INSERT IN INK, THE PAYEE'S NAME AND ADDRESS, AND ASSUMES ALL RESPONSIBILITY FOR ALL EVENTS MADE POSSIBLE BY FAILURE TO DO SO.

PAY
TO THE ORDER OF  HSC

****700*DOLLARS*AND*00*CENTS*

Horne Campus Mine #2501-0001
Des Moines, IA 50328-0001

RETAIN THIS COPY FOR YOUR RECORDS

82-40/1021
Issued by Integrated Payment Systems Inc. Englewood, Colorado
Payable at Wells Fargo Bank Grand Junction - Downtown, N.A. Grand Junction, Colorado

**NON NEGOTIABLE**
SIGNATURE
STREET ADDRESS
CITY/STATE/ZIP
94002 FLEET BANK

**Fleet**

PERSONAL
MONEY ORDER

629672413

82-40/1021

NOT VALID OVER $1000

Date

NOTE: THE PURCHASER OF THIS MONEY ORDER AGREES TO INSERT IN INK THE PAYEE'S NAME AND ADDRESS, AND ASSUMES ALL RESPONSIBILITY FOR ALL EVENTS MADE POSSIBLE BY FAILURE TO DO SO.

PAY

TO THE ORDER OF

NON NEGOTIABLE

SIGNATURE                    CUSTOMER COPY
STREET ADDRESS
CITY / STATE / ZIP
FLEET BANK

RETAIN THIS COPY FOR YOUR RECORDS

**Fleet**

PERSONAL
MONEY ORDER

629672412

82-40/1021
Issued by Integrated Payment Systems Inc., Englewood, Colorado
Payable at Wells Fargo Bank Grand Junction  Downtown N.A., Grand Junction, Colorado

NOT VALID OVER $1000

Date

NOTE: THE PURCHASER OF THIS MONEY ORDER AGREES TO INSERT IN INK, THE PAYEE'S NAME AND ADDRESS, AND ASSUMES ALL RESPONSIBILITY FOR ALL EVENTS MADE POSSIBLE BY FAILURE TO DO SO

PAY

TO THE ORDER OF

NON NEGOTIABLE

SIGNATURE                    CUSTOMER COPY
STREET ADDRESS
CITY / STATE / ZIP
FLEET BANK

RETAIN THIS COPY FOR YOUR RECORDS

Case
Index No. 802-86919-SB    Year
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In Re:

OSCAR PEREZ,

Debtor.

OBJECTION TO MOTION TO VACATE
STAY

Signature (Rule 130-1.1-a)

Print name beneath

OSCAR PEREZ
Attorney for
Office and Post Office Address, Telephone
30 Penndale Drive
Amityville, NY    11701

To

Attorney(s) for

Service of a copy of the within is hereby admitted.
Dated

Attorney(s) for

NOTICE OF ENTRY
PLEASE take notice that the within is a (certified) true copy of a duly entered in the office of the clerk of the within named court on

Dated,    Yours, etc.

Attorney for
Office and Post Office Address

To

Attorney(s) for

NOTICE OF SETTLEMENT
PLEASE take notice that an order of which the within is a true copy will be presented for settlement to the Hon.

one of the judges of the within named Court, at

on
at    M.
Dated,    Yours, etc.

Attorney for
Office and Post Office Address

To

Attorney(s) for